## MUEHL v. SMOOT et al.

No. 5431.   Decided December 26, 1936.   (63 P. [2d] 563.)

*Romney & Nelson* and *R. J. Hogan,* all of Salt Lake City, for appellants.

*Chris Mathison* and *Walter C. Hurd,* both of Salt Lake City, for respondent.

PRATT, District Judge.

Defendants appeal from a judgment rendered against them and in favor of plaintiff upon their promissory note in the sum of $3,500, dated February 28, 1931, and payable one year thereafter. It was the contention of defendants that they had been released from the note and that plaintiff agreed to take and had taken in lieu thereof the obligation of an Idaho corporation known as the Smoot Compressed Air Valve Company to pay said sum, and had agreed to accept and had accepted shares of its stock and certain bonds known as Dominion Reindeer Products First Mortgage bonds as security for the payment of the $3,500.

The principal assignments of error attack the findings of the lower court on the ground that they are not supported by the evidence. The findings referred to in substance are: That defendants have not paid said note nor any

part thereof; that plaintiff did not agree to release nor did he release the defendants or any of them from their liability as makers of said note; that plaintiff did not agree to accept nor did he accept nor did he receive the Reindeer bonds as security for the obligation; and that plaintiff did not agree to accept nor did he accept the Smoot Compressed Air Valve Company as debtor in lieu of said defendants or any of them.

In an action such as this, if there is substantial evidence to support the lower court's findings, they must be upheld. We do not pass upon the weight of the evidence.

The Sim-Plist Spray Company, in which all parties except the defendant H. A. Smoot were formerly interested, was in the hands of a receiver. The defendants borrowed the $3,500 from plaintiff and purchased from the receiver certain patent rights and equipment pertaining to a spray machine, for the purpose of organizing a company to be known as the Motor Compressed Air Company to manufacture and sell the spray. Plaintiff was to be interested in the new company and was also to receive from defendants certain shares of their stock as security for the payment of his note. The organization was never completed, the shares never delivered, and, of course, they were worthless.

The Smoot Compressed Air Valve Company was a corporation organized in Idaho by the defendant H. A. Smoot, one W. B. Jacobs, also formerly interested in the Sim-Plist Company, and one D. S. Gill. A man by the name of Eric Krussman was interested in this company though not a signer of its articles. Krussman was the owner of the Reindeer bonds. This corporation was organized subsequent to the time of the attempted organization of the Motor Compressed Air Company for the purpose of manufacturing and selling the spray.

The theory of the defense is this: In order to organize the Idaho corporation for the purpose indicated, it was necessary

to get the defendants Mosses, Jackson, and Romney released from the note and their interest in the patent rights and equipment transferred to Smoot, and Jacobs, who would assume the obligation until the new corporation was organized, at which time they would in turn transfer those rights and that equipment to that corporation, which would assume the obligation and give plaintiff the bonds and stock as security. Defendants contend that plaintiff agreed to this, that he released the Mosses, Jackson, and Romney for the obligation of Smoot and Jacobs, and subsequently released all defendants for the Smoot Compressed Air Valve Company obligation.

Smoot and Jacobs entered into the following contract with each of the defendants Mosses, Romney, and Jackson. We set out only one of these contracts for reference as they are identical:

### "Agreement.

"This Agreement, made in duplicate this 16th day of November, 1931, by and between W. B. Jacobs and H. A. Smoot, of Salt Lake City, Utah, parties of the first part, and *E. H. Moss, of Salt Lake City, Utah,* party of the second part, witnesseth:

"That, whereas, party of the second part has an undivided interest in a certain patent No. 1751709, dated March 25, 1930, originally issued to Frantz F. Nielsen, Rea H. Nielsen and James R. Nielsen, covering a certain invention, consisting· of a motor spraying attachment for liquid sprayers together with improvements thereon, and other machinery and personal property mentioned in a certain bill of sale from the Intermountain Association of Credit Men dated March 3, 1931, to H. A. Smoot, John Jackson, E. H. Moss, G. R. Allena and D. Ray Moss, and

"Whereas, it was the intention of the undersigned, together with certain other persons to incorporate a company to own and manufacture said machinery and other articles, and

"Whereas, as a part of the transaction leading up to the proposed incorporation of said company the undersigned together with certain other persons signed a certain note of $3500.00 to Martin Muehl dated *Feb. 28—1931,* and incurred certain other obligations and expenses in connection with said proposed corporation and otherwise, and

"Whereas, parties of the first part propose to incorporate a company in the State of Idaho and are willing to assume and pay off all

of the obligations, including said $3500.00 note, owed by the undersigned and/or others whose names appear on said note in consideration of the assignment of all of the interest of second party in said invention and other personal property.

"Now, therefore, in consideration of the sum of $1.00 in hand paid by each party to this agreement to the other, receipt of which is hereby acknowledged, other valuable consideration and the covenants and agreements herein contained to be kept, it is hereby covenanted and agreed between the parties hereto as follows, to-wit:

"1.   In consideration of the agreement of first parties to pay or cause to be paid the said $3500.00 note to Martin Muehl, together with any and every other obligation for which second party is personally or jointly liable, incurred in the proposed organization of the aforementioned corporation or otherwise in connection with the handling, and/or development of the aforementioned invention, second party agrees to sell, assign, transfer and set over to first party all of his right, title and interest of every name and nature in and to the aforesaid patent and invention, or improvements thereto and any remaining part of the personal property mentioned in said bill of sale of March 3, 1931.

"2.   In consideration of the transfer to said first parties of said interest of said second party as hereinbefore set forth, first parties agree to pay or cause to be paid the said note of $3500.00 to said Martin Muehl, together with any and every other obligation or claim incurred in the proposed incorporation of the aforementioned company or in the handling, manufacture, disposition or otherwise of the invention and/or machines aforementioned, agreeing to hold second party harmless and without liability from every such claim of whatsoever nature.   Second party's interest in said invention, patent and other personal property shall pass to first parties only upon the payment in full of the aforementioned note of $3500.00 and other obligations.

"In witness whereof, the parties hereto have set their hands and seals the day and year first hereinabove written.

"W. J. Jacobs
"H. A. Smoot
     "Parties of the First Part
"E. H. Moss
     "Party of the Second Part

"Witnesses:
  "Gaskell Romney"

Smoot, Jacobs, and plaintiff Muehl entered into the following contract:

"Agreement.

"This agreement, dated as of November 19, 1931, between H. A. Smoot, W. B. Jacobs, and Martin Muehl, it being understood that there have been mutual business relationships between these gentlemen for some time, all of them being interested in certain patents, and patents applied for, and patents pending pertaining to compressed air from an internal combustion engine, and air valves. These relationships have been existing mutually for some months and being that there were other parties interested who have now released all their interests in these above mentioned patents and patents applied for, etc., and being that there was a note that was signed by H. A. Smoot and a number of other parties interested, to Martin Muehl and being that Martin Muehl mutually agreed to release these parties off of the note, H. A. Smoot and W. B. Jacobs have hereby agreed with other associates to incorporate a company and take over all the interests of the patents and patents applied for and to proceed with the operation, assembling and manufacturing. H. A. Smoot and W. B. Jacobs have further agreed to secure Martin Muehl for the $3500.00 due him by furnishing as security $5000.00 worth of Dominion Reindeer Products Company 7 per cent first mortgage bonds, same being held by Martin Muehl until all the $3500.00 with interest at 8 per cent is paid in full, and that Martin Muehl agrees to hold the security only until such a time as he is paid in full and then to return to them the above mentioned securities.

"It is further agreed by H. A. Smoot, W. B. Jacobs and Martin Muehl, that as soon as the company is organized, that they will use their very best efforts to develop and do everything humanly possible for the new company's best interest. It is further agreed that after the organizations expenses have been paid, and the operating expenses from month to month are paid, that 40 per cent out of each dollar that the company takes in, either from the sale of its products or the sale of its securities, (if it sells any), will be turned over to Martin Muehl and that the above mentioned gentlemen also mutually agree that Martin Muehl will be paid as soon as it is humanly possible to do so.

"It is further understood that Martin Muehl will hold $5,000.00 worth of first mortgage 7 per cent bonds as previously stated and that in addition to that, and for his consideration and interest in the business, he is to receive $5,000.00 worth of common stock in the new company that is now being organized. This agreement will also act as mutually agreed by the above gentlemen, to turn all patents and

patents applied for and patents pending, over to the officers of the newly organized company. The patents, patents applied for, and patents pending, will now, after the signing of this agreement, be the property of the newly organized company, known as the Smoot Compressed Air Valve Company.

"It is also understood that this agreement is entirely of a mutual understanding with the three gentlemen and it is signed with their full knowledge and understanding, believing that it is for the very best interests of the newly proposed company and their own interests, and that a copy of this agreement be held by each of the above named parties.

"H. A. Smoot
"W. B. Jacobs
"Martin Muehl

"Witness
    "E. J. Merrill

"State of Idaho, County of Bannock, ss.:

"On this 20 day of Nov. 1931, before me, the undersigned, a Notary Public in and for the said county and state, personally appeared H. A. Smoot, W. B. Jacobs, and Martin Muehl, all of Farmington, Utah, Rockland, Idaho and Salt Lake City, Utah, respectively, known to me to be the persons whose names are subcribed to the within instrument, and acknowledged to me that they executed the same.

"In witness whereof, I have hereunto set my hand and affixed my official seal the day and year in this certificate first above written. Ezra J. Merrill, Notary Public for Idaho, residing at Pocatello, Idaho therein.

"[Seal.]                              Com Exp July 20, 1934."

As we read these contracts, we are impressed with the fact that they do not of themselves clearly show the intentions of the parties. They must be considered in the light of the other evidence in the case both oral and documentary.

If, as defendants contend, that at that time in the course of the transactions when the contracts of November 16th had been signed and exhibited to plaintiff, the defendants other than Smoot were released from the obligation of the note, then this view of the evidence must be the only practicable view to take of it for us to reverse the lower court's findings to the contrary. But there is evidence supporting

the view adopted by the lower court. Plaintiff denied any such agreement. The contract of November 19th in its recitals says that Martin Muehl agreed to release, not that he has released, those parties. Plaintiff did not return the note. And other evidence might be cited. This contention then must fail for the reason indicated.

Defendants contend that plaintiff promised to release the defendants in consideration of the promise of Smoot and Jacobs to organize the Idaho corporation and secure the $3,500 obligation with the Reindeer bonds and stock in that new company. The following quotation as taken from the contract of November 19th might lead to such a conclusion: "* * * and being that Martin Muehl mutually agreed to release these parties off of the note, H. A. Smoot and W. B. Jacobs have hereby agreed with other associates to incorporate a company * * * H. A. Smoot and W. B. Jacobs have further agreed to secure Martin Muehl for the $3500.00 due him by furnishing as security, etc." But the recitals in the contract with reference to the fact that those other parties have now released their interest in the patent and patents applied for would indicate that the promise to release meant nothing. This may also be said of its provisions for immediate transfer of those patent rights to the Idaho corporation. The contracts of November 16th made no provision for the transfer of title upon merely a promise to release defendants. Thus the lower court might well find against this contention of defendants.

There is another angle to the case upon which defendants lay considerable weight. That is this: They say the contracts had become executed as plaintiff had received the stock of the Idaho corporation and had received the Reindeer bonds. The evidence is in conflict as to whether or not he received the Reindeer bonds. Plaintiff denied that to be the fact. His receipt does show the receipt of the stock, but again we find an uncertainty in the contract of the 19th, as to whether or not the stock was intended as a security for the $3,500 obligation, or whether it was consideration to him for an

interest he claimed in the patent rights and equipment. Apparently throughout the transactions between the parties it was contemplated that plaintiff should be interested, not only in the first corporation which they attempted to organize, but in the Idaho corporation. The evidence disclosed that he did work upon the spray machine, made certain improvements thereon, and sought a patent upon those improvements. Under such circumstances the delivery to him of the stock in a new corporation might well be considered a consideration for his interest in the property of the corporation, and not a delivery of stock as security for the payment of the obligation.

We believe we have set out sufficient to indicate that this is not a case in which the evidence supports only the defendants' theory. Apparently the lower court, judging from its opinion rendered at the time of the decision, felt that although it was possible to reason the case out, as have defendants, it was highly improbable that such was the intention of the parties. That court had the opportunity of listening to the witnesses and considering their intelligence and their experience in life; he was in a far better position than are we to determine whether or not the parties as they entered into these contracts reasoned as astutely as do their counsel.

The lower court rejected the introduction of the articles of incorporation of the Motor Compressed Air Company. This was assigned as error. In view of the fact that it was conceded that the organization of that company was not completed and its stock was not delivered as security for the note, we can see no merit to the thought that it was prejudicial. Objection was raised to the lower court's permitting the introduction of a letter from the Secretary of State of the State of Idaho showing that the Smoot Compressed Air Valve Company had not paid its fees and was in effect a defunct corporation at the time of the trial. Suppose this had not been introduced. Would it have made any difference in the decision? Apparently

not, as there was plenty of evidence to support the lower court's findings, and we are not justified in assuming it was prejudicial without some indication of that fact. All through the case there is to be found considerable evidence of failure by the parties to accomplish what they set out to do; so the fact that, in the eyes of the law, the corporation had lost its standing, is of little importance.

There are other errors assigned which we do not believe are of sufficient weight to discuss.

The judgment of the lower court is affirmed. Costs to respondent.

EPHRAIM HANSON, and MOFFAT, JJ., concur.

ELIAS HANSEN, Chief Justice (dissenting).

I dissent. The evidence without conflict establishes the following facts: On February 20, 1931, the defendants made, executed, and delivered their promissory note to plaintiff. The note was for the principal sum of $3,500, was made payable one year after date, and provided for the payment of interest from date at 10 per cent. per annum and for the payment of a reasonable attorney's fee in the event suit was brought to collect the same. The $3,500 mentioned in the note was loaned to the defendants to enable them to purchase certain patents for an air valve and other personal property belonging to the Sim-Plist Spray Manufacturing Company which was in the process of being liquidated under a receivership proceeding. The defendants used the money furnished by plaintiff to purchase the patents and other personal property. The title thereto was taken in the names of the defendants. During the first few months after defendants acquired the patents and other personal property, they undertook to improve the valve and to manufacture a few machines to demonstrate the efficiency of the valve. Plaintiff, who was an expert machinist and an inventor, assisted in that work. He attempted to improve the valve. He also constructed or directed the construction of a few mechanical

devices upon which the valve was used. It soon became apparent that additional funds were necessary to make the venture a success. It was agreed by plaintiff and defendants that a corporation should be formed and some of the stock thereof sold to secure funds with which to carry on and to pay plaintiff the money owing to him on the note. Articles of incorporation were drawn up for the purpose of forming a Utah corporation. Plaintiff signed the articles but they were not filed. In November of 1931 the defendant H. A. Smoot and one W. B. Jacobs conceived the idea of forming a corporation in the state of Idaho. They represented to plaintiff that one E. A. Krussman was a man of considerable means and that he would invest money with which to pay plaintiff the amount owing him on his note and to finance the manufacture of the valve covered by the patent. Jacobs and defendant Smoot also informed plaintiff that before a corporation could be formed in Idaho it would be necessary to acquire the interests held by E. H. Moss, D. Ray Moss, John Jackson, and Kaskell Romney in and to the patents theretofore purchased. On November 16, 1931, Jacobs and defendant Smoot entered into agreements with each of the other defendants whereby each of such defendants agreed to sell, assign, transfer, and set over to Jacobs and Smoot all of his right, title, and interest of every name and nature in and to the patents and inventions together with improvements thereon and all of the remaining personal property theretofore purchased from the receiver of the Sim-Plist Spray Manufacturing Company. In consideration of such transfer, Jacobs and Smoot agreed "to pay or cause to be paid said note of $3500.00 to said Martin Muehl, together with any and every other obligation or claim incurred in the proposed incorporation of the aforementioned company or in the handling, manufacture, disposition or otherwise of the invention and/or machines aforementioned, agreeing to hold second party harmless and without liability from every such claim of whatsoever nature. Second party's interest in said invention, patent and other personal property

shall pass to first parties only upon the payment in full of the aforementioned note of $3,500.00 and other obligations."

After the agreements above mentioned were entered into, Jacobs, Smoot, and plaintiff Muehl went to Pocatello, Idaho, where they met E. A. Krussman. Negotiations were there had with respect to the forming of a new corporation to be known as the Smoot Compressed Air Valve Company. Preparatory to the forming of a new corporation, Jacobs, defendant Smoot, and plaintiff entered into a contract under date of November 19, 1931, wherein it was recited that:

The parties thereto were

"* * * interested in certain patents and patents applied for and patents pending pertaining to compressed air from an internal combustion engine and air valve, * * * that there were other parties interested who have now released all their interests in these above mentioned patents and patents applied for, etc., and being that there was a note that was signed by H. A. Smoot and a number of other parties interested, to Martin Muehl and being that Martin Muehl mutually agreed to release these parties off of the note, H. A. Smoot and W. B. Jacobs have hereby agreed with other associates to incorporate a company and take over all the interests of the patents and patents applied for and to proceed with the operation, assembling and manufacturing. H. A. Smoot and W. B. Jacobs have further agreed to secure Martin Muehl for the $3,500.00 due him by furnishing as security $5,000.00 worth of Dominion Reindeer Products Company 7 per cent first mortgage bonds, same being held by Martin Muehl until all the $3,500.00 with interest at 8 per cent is paid in full, and that Martin Muehl agrees to hold the security only until such a time as he is paid in full and then to return to them the above mentioned securities.

"It is further agreed by H. A. Smoot, W. B. Jacobs and Martin Muehl, that as soon as the company is organized, that they will use their very best efforts to develop and do everything humanly possible for the new company's best interest. It is further agreed that after the organizations expenses have been paid, and the operating expenses from month to month are paid, that 40 per cent out of each dollar that the company takes in, either from the sale of its products or the sale of its securities (if it sells any), will be turned over to Martin Muehl and that the above mentioned gentlemen also mutually agree that Martin Muehl will be paid as soon as it is humanly possible to do so.

"It is further understood that Martin Muehl will hold $5,000.00 worth of first mortgage 7 per cent bonds as previously stated and that in addition to that, and for his consideration and interest in the business, he is to receive $5,000.00 worth of common stock in the new company that is now being organized. This agreement will also act as mutually agreed by the above gentlemen, to turn all patents and patents applied for and patents pending, over to the officers of the newly organized company. The patents, patents applied for, and patents pending, will now, after the signing of this agreement, be the property of the newly organized company, known as the Smoot Compressed Air Valve Company."

On November 20, 1931, articles of incorporation of the Smoot Compressed Air Valve Company were executed by W. B. Jacobs, H. A. Smoot, and B. S. Gill. The authorized capital stock of the corporation was fixed at $100,000, divided into 100,000 shares of $1 a share. After the corporation was organized, 5,000 shares of its capital stock were issued to plaintiff. The Dominion Reindeer Products Company bonds were not received by plaintiff. Touching the reason why the bonds were not delivered, the evidence shows that it was agreed by plaintiff and Messrs. Smoot, Jacobs, and Krussman that Mr. Krussman should deliver the bonds to plaintiff; that when such agreement was made the bonds were in a bank in Seattle, Wash. There is evidence tending to show that the bonds were sent to Mr. Krussman at Pocatello. There is no evidence to the contrary. Plaintiff testified that at the time he signed the contract with Smoot and Jacobs, Mr. Krussman asked him (plaintiff) for his address so that the bonds could be sent to him; that plaintiff responded that Mr. Smoot had his address, "but you don't need to send them if you don't want to. I come up again anyway and see if I get the money." About three or four weeks later, plaintiff again went to Pocatello. On that occasion Mr. Krussman told plaintiff to come up to the office and get the bonds; that plaintiff went into Krussman's office but did not ask for the bonds; that he asked Krussman if he could borrow money on the bonds; and that Krussman replied that he did not think he could. Plaintiff further testified that on his

second visit to Pocatello he frequently asked Krussman and Smoot for money to apply on his note, but was unable to get any. The evidence further shows that the Smoot Compressed Air Valve Company for a time after its organization maintained an office and workshop at Pocatello, Idaho. In 1933 the corporation was delinquent in paying its annual license tax and unless the tax was paid on or before June 30th of that year its charter would be declared forfeited.

The foregoing facts, being, as they are, established without any controversy in the evidence, present for determination a question of law. Plaintiff, according to his own testimony, knew that Jacobs and defendant Smoot had the right to transfer the patents and property purchased from the Sim-Plist Spray Manufacturing Company on the condition, and only on the condition, that the other defendants be relieved from liability on the note sued upon in this action. Notwithstanding he had such knowledge, he signed the contract of February 19, 1931, with Jacobs and defendant Smoot. He participated in the organization of the Smoot Compressed Air Valve Company. After that corporation was organized and his contract with Jacobs and defendant Smoot was transferred to the corporation, he accepted 5,000 shares of its capital stock. To permit plaintiff to now say that defendants other than Smoot are still liable on the note would be to permit him to perpetrate a fraud either on such defendants or on the corporation. If defendants other than Smoot remain liable on the note, it follows that they should not be deprived of their interest in the property purchased from the Sim-Plist Spray Manufacturing Company. It is, to say the least, doubtful if such defendants may successfully maintain a claim to such patents and other property against the claims of the Smoot Compressed Air Valve Company or its creditors. Moreover, it is apparent from plaintiff's own evidence that his failure to receive the bonds of the Dominion Reindeer Products Company was due to his own fault. He told Mr. Krussman that he would call for the bonds. Mr. Krussman told him to come up to the office and get

the bonds. Plaintiff went to Mr. Krussman's office but did not ask for the bonds, but did ask for money. So far as appears, plaintiff at no time requested the delivery of the bonds, notwithstanding he told Mr. Krussman to keep them until they were called for.

The authorities dealing with the doctrine of accord and satisfaction recognize a distinction between an agreement which in and of itself is accepted as satisfaction and an agreement in which nothing short of the actual performance thereof is to be accepted as satisfaction. 10 A. L. R. 234 et seq., and cases there cited. As I read the evidence brought here for review, the distinction so made need not concern us in the instant case. By executing the contracts with Jacobs and defendant Smoot, the other defendants relinquished all of their interest in the patents and other property upon condition that they be relieved from liability on plaintiff's note together with any other obligations growing out of the venture. So far as appears, there were no other obligations. If there were, the defendants are not complaining because they have not been released from the payment thereof. The defendants other than Smoot have fully performed all that was required of them to carry out the plan contemplated by the parties to this litigation. Plaintiff, by his participation in the organization of the Smoot Compressed Air Valve Company, with full knowledge of all the facts, may not now be heard to say that he has not accepted the relinquishment of the interest of the defendants other than Smoot in and to the patents and other personal property in question. Having accepted such relinquishment, plaintiff may not hold them liable on the note. So, also, by requesting Krussman to hold the bonds until called for, plaintiff may not be heard to complain because the bonds have not been delivered, in the absence of a request for delivery. The defendant Smoot having, by and with plaintiff's consent, left the bonds with Krussman for delivery, is in no sense in default because the same have not been delivered.

In his reply, plaintiff charges fraud as to representations alleged to have been made with respect to the value of the bonds, but as there is no finding with respect thereto that question is not before us for review.

I am thus of the opinion that the judgment should be reversed, and the cause remanded to the district court of Salt Lake county, with directions to grant a new trial.

FOLLAND, Justice (dissenting).

I concur in the views expressed in the dissenting opinion of Mr. Chief Justice ELIAS HANSEN.

WOLFE, J., being disqualified, did not participate herein.